OPINION
Terry L. Quinn was indicted by a Franklin County grand jury in February 2000, charged with a single count of domestic violence, in violation of R.C. 2919.25. The indictment further alleged that Mr. Quinn had been previously convicted of negligent assault in July 1998; as a result, the state sought to "enhance" the degree of the offense from a first-degree misdemeanor to a fifth-degree felony. The victim of the alleged domestic violence was Shelly A. Stephens,[1] his girlfriend. The two resided together, along with their young child and Ms. Stephens's older child.
The charge stemmed from an incident on August 20, 1999, during which Mr. Quinn allegedly assaulted Ms. Stephens, the specifics of which are discussed below.
A jury trial commenced on September 13, 2000. The jury ultimately returned a guilty verdict. The trial judge scheduled the case for sentencing at a later date. Mr. Quinn was sentenced to eleven months' incarceration, one month short of the maximum allowable penalty for a felony of the fifth degree, pursuant to R.C. 2929.14(A)(5).
Terry L. Quinn (hereinafter "appellant") has timely appealed, assigning a single error for our consideration:
 The defendant was denied effective assistance of counsel, as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.
Appellant acknowledges the heavy burden he bears in demonstrating ineffective assistance of counsel. Pursuant to the well-established principles enunciated in Strickland v. Washington (1984), 466 U.S. 668, and its progeny, appellant must show that counsel's performance was so deficient that he was not functioning as professionally competent counsel and that the deficient performance deprived him of a fair trial. Stated generally, a defendant is denied a fair trial if, but for trial counsel's deficient performance, the outcome of the trial might have been different.
Such a determination requires examination of the record in its entirety. We must delve into the record to determine whether the purportedly erroneous acts or omissions attributed to defense counsel were indeed erroneous or deficient, and further, that the errors were so prejudicial, either cumulatively or each independently, that there exists a reasonable probability that the outcome of the proceedings would have been different in the absence of those errors.
A careful review of the record establishes that appellant violently abused Ms. Stephens, as alleged in the indictment. The prosecution presented five witnesses, one of whom was the victim.
Ms. Stephens explained what had led to the fight. Appellant was upset that Ms. Stephens was working at a strip club. When she returned home from work on the night in question, she tried to "make up" with him by getting into bed with him. She provided the following details of the fight:
 *** And I was on top of him in our bed, and he didn't want us to make up, so he kicked me off him with his knees. And that's how it all started.
 He started punching me. He had me down [on] the floor, kicking me in my back, my private parts, my ribs. Then I got up and ran downstairs, went out the door. He came following me. And at this time we are outside, and he grabbed me by the back of my hair, starts punching me in my face over and over and over again, and pulls me back into the house by my hair.
 And Lorrie was standing there and she started asking, asking what was going on, trying to stop him from doing what he was doing. He slammed me down in a chair, started to go upstairs saying that if he wasn't going to sleep, nobody was going to sleep.
 He went upstairs and got my four-year-old daughter out of bed by smacking her hind end, and he grabbed the two-year-old and brought her downstairs and just put her on the floor like she was a sack of potatoes. And my daughter, my four-year-old at the time was sitting right beside me in a chair. And he looked at her and said he would like to cut her mommy's head off and put it in her lap. [Tr. 19-20.]
Ms. Stephens added that when she and appellant were upstairs earlier, she saw appellant with a knife in his hand after he kicked her off the bed. According to Ms. Stephens, appellant stabbed the knife into the floor. He did pick up the knife again, carrying it downstairs with him. When Ms. Stevens asked him what it was for, "*** he said it was to protect his family." (Tr. 20.) He then "*** just started screaming and cursing again." Ms. Stephens estimates that the ordeal lasted from "1:50 something at night and ended at like 4 something in the morning." (Tr. 21.)
According to Ms. Stephens, she sustained injuries in the form of a black eye, cuts and bruises on her hand, and her "whole back side was bruised." (Tr. 29-30.)
Upon further examination, Ms. Stephens explained that this incident was the second such incident of the day. Police responded to an earlier incident, which essentially culminated in a conclusion by police that this was not a case of domestic violence. The testimony of Ms. Stephens suggests that her promise to vacate the residence the next morning was sufficient for the police. When they were summoned to the scene the second time, for the incident detailed above, they arrested appellant.
Ms. Stephens went to the hospital the following day to have her injuries treated. A physician prescribed pain medication for her, "Darvocet or Percocet or something like that." (Tr. 33.)
Another witness called by the state was Lorrie Justice, a friend of Ms. Stephens who was staying with appellant and Ms. Stephens at the time of the incident. Ms. Justice testified that she witnessed appellant repeatedly striking Ms. Stephens in the face and saw him drag her "by the neck, an arm-lock backwards." Appellant "kept hitting her, then threw her down in the chair." She also saw appellant threaten Ms. Stephens with a "big knife, about 10 inches" in length. (Tr. 169-170.)
Patrolman Kenneth Bowers of the city of Columbus, Division of Police, testified regarding his observations upon arriving at the crime scene. He first encountered Ms. Stephens, who told him that appellant had assaulted her. There was a man with a knife in the house and her immediate concern was her children who were still in the house. According to Bowers, he and other officers found an "8-or-10-inch like butcher knife. It was stuck by the [baby's] crib but on like the wooden floor." Although appellant initially resisted arrest, several officers were eventually able to subdue him enough to put handcuffs on him. (Tr. 141-145.)
Patrolman Bowers acknowledged that he forgot to take photos of and/or retrieve the knife as evidence. He attributed this lapse to the necessity of going back downstairs to assist the other officers with whom appellant was struggling as they attempted to arrest him. Finally, Patrolman Bowers identified appellant as the violent man about whom he had been testifying.
Kim Foster, a detective in the Child Abuse Unit of the City of Columbus, Division of Police, testified regarding her interview with appellant after his arrest. She interviewed him approximately one month following the incident. Appellant admitted to her that he "used his knees to push her off the bed." (Tr. 128.) He also "said he used his knees and hands and also struck her once in the head." (Tr. 128-129.)
The defense rested without presenting any evidence. A review of the cross-examination of the state's witnesses reveals defense counsel's apparent self-defense theory. Stated simply, appellant's defense at trial suggested that Ms. Stephens was the aggressor and appellant was simply protecting himself from her attempts to strike him.
Turning now to the merits of appellant's argument, he contends that he was denied the effective assistance of counsel in several respects. First, appellant argues that trial counsel failed to file and pursue a motion to suppress evidence.
Appellant contends that trial counsel was ineffective in failing to pursue a motion seeking suppression of his statements to Detective Foster. Appellant also argues that the detective's reliance upon a document to refresh her memory rendered that portion of her testimony inadmissible. We disagree. The rules of evidence clearly allow under circumstances such as those present here, for a witness's memory to be refreshed as to that witness's recollection. In any event, appellant has not demonstrated the requisite prejudice. Even if the detective's testimony was stricken in its entirety, we cannot say that the outcome of this trial would have been different. Given the overwhelming evidence of appellant's guilt, he cannot demonstrate prejudice here.
Failure to demonstrate prejudice also renders most of appellant's remaining claims meritless. Trial counsel's purported failure to invoke Evid.R. 615, separation of witnesses during testimony, is not established by the record. The record is silent as to whether or not such a motion was sought. Assuming arguendo that witnesses Shelly Stephens and Lorrie Justice heard one another's testimony, appellant has not established the requisite degree of prejudice. Instead, appellant offers mere speculation regarding what the witnesses "might" have said or not said if they had not had the benefit of hearing the other's testimony. While the separation of witnesses rule is clearly one which is usually invoked, and with good reason, appellate counsel can only speculate about possible "inconsistencies" that might have been unearthed.
Appellant next takes issue with trial counsel's failure to "develop and follow a theory of the case," self-defense, in particular. While trial counsel did not consistently proceed on a self-defense theory, a review of the transcript reveals that this is essentially the only cohesive theory counsel could offer. The theory of self-defense became an issue immediately as the victim's own testimony started with the observation that she crawled into bed with him, and he responded by throwing her back out of his bed. The concept of self-defense was presented to the jury a number of times via defense counsel's cross-examination of certain prosecution witnesses. Nevertheless, read in its entirety, this record is insufficient to sustain a finding that appellant's trial counsel failed to put forth any theory to defend his client and that such failure amounted to ineffective assistance.
Appellant's next claim is similar — that "[d]espite Defendant's urging that the one time he struck the Defendant and threw her from the bed he was acting in self-defense, counsel did not argue self-defense and did not request an instruction to the jury on self defense and further would not allow the Defendant to testify in support of self defense [and] the Defendant desired to do so." (Brief at 12.)
We summarily reject this claim as amounting to ineffective assistance of counsel based upon our discussion of the previous claim. To the extent appellant claims ineffectiveness in counsel's failure to put appellant on the stand, and that appellant "desired to do so," the record before us does not establish that. Again, we cannot review a claim based upon a portion of the record which simply does not exist. Finally, again assuming arguendo that appellant wanted to testify, the record suggests that it was a reasonable trial strategy to keep appellant off the stand so that he would not be subjected to cross-examination. Accordingly, we can find no prejudice from defense counsel's decision to keep his client off the stand, even if the theory of the case was self-defense. As stated infra, the concept of self-defense was clearly before this jury.
Next, appellant takes issue with trial counsel "permit[ing] the prosecutor to ask the alleged victim over 20 leading questions, some of which went directly to the elements the prosecutor had to prove," in contravention of Evid.R. 611. (Brief at 15.) We agree with the prosecution's characterization of the testimony. First, the challenged questions do not all appear to be leading. Instead, many of the questions are simply prefaced with the witness's answer to the prior question. Simply stated, the prosecution merely began a question by repeating something the witness had already provided in answering a prior question. Assuming arguendo that the questions were leading, appellant has nevertheless failed to demonstrate any resulting prejudice.
The next example of alleged ineffectiveness was trial counsel's stipulation to an element of the state's case, in particular, the enhancement to a felony based upon a prior conviction. We address this issue in a different manner in our disposition of appellant's final claim.
Appellant's final contention is that he was denied effective assistance of counsel because he was erroneously convicted of and sentenced on a fifth-degree felony instead of a first-degree misdemeanor. Since the indictment and jury instructions failed to include the "family or household member" language to prove the enhancement element, the state concedes that appellant should have been convicted of only a misdemeanor offense.
R.C. 2919.25 provides, in pertinent part:
 (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
***
 (D) Whoever violates this section is guilty of domestic violence. *** [A] violation of division (A) *** of this section is a misdemeanor of the first degree. If the offender previously has been convicted of domestic violence *** involving a person who was a family or household member at the time of the violation, *** a violation of division (A)*** is a felony of the fifth degree ***. [Emphasis added.]
As indicated above, the state confesses error here because of the defective indictment and jury instructions, neither of which contains the necessary language alleging that his prior negligent assault involved "a person who was a family or household member at the time of the violation." In addition, we note that the jury's verdict only specifies that "the defendant *** was convicted of negligent assault on July 22, 1998," with no finding regarding the identity of the victim or that the victim was a household member at the time of the previous incident. (Tr. 215.)
However, the state argues that this error did not render counsel ineffective. Instead, this is simply a matter of plain error by the trial court. We agree.
The assignment of error, as stated, is overruled. However, appellant's conviction and sentence are vacated, and this cause is remanded with instructions to enter a finding of guilt as to first-degree misdemeanor domestic violence and for further proceedings consistent with this decision.
DESHLER and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The indictment erroneously spells the victim's last name as "Stevens."